TALBURT (FOY v.).   See Case No. 5,020.

TALBURT (MARY v.).   See Case No. 9,192.

TALCOTT, Ex parte.   See Case No. 13,184.

## Case No. 13,734.

### TALCOTT v. DELAWARE INS. CO.

[2 Wash. C. C. 449.] [1]

Circuit Court, D. Pennsylvania.   April Term, 1810.

NOTARIES — AUTHENTICATION OF COPIES OF RECORDS—SEAL—MARINE INSURANCE—INTEREST—VALUE OF CARGO.

1. The copy of a record of the condemnation of the property insured, was offered in evidence without the seal of the officer who made out the copy; but there were on the margin of each page, flourishes with the pen. No proof was given, that the officer had or had not a seal. The court rejected the evidence.

2. A copy of the manifest of the cargo taken in at Havana, and certified, without a seal, by a notary, with a certificate, signed by three notaries, that full faith and credit ought to be given to the acts of their associate, was not permitted to be read in evidence, because it did not

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

appear that the notary had charge of these papers, and authority to authenticate them.

3. The bill of lading is evidence of interest; and the jury, in the absence of an invoice, can easily estimate the value of the cargo.

This was an insurance on goods, dated July 9th 1806, on board the schooner Commerce, at and from Havana to New-York; premium, 3½ per cent.; warranted American property, to be proved at Philadelphia. The vessel sailed on the voyage insured, and on the 1st of July, was captured by a Spanish privateer, and carried into St. Augustine. One of the counts is for a loss by capture, and the other by barratry of master. Policy open. After evidence was given tending to prove the fraudulent misconduct of the master, to which the loss was imputed, and contrary evidence on the part of the defendants, the record of the proceedings in the tribunal at St. Augustine, was offered in evidence by the defendants. On the former trial of this cause, the court rejected this evidence, upon the ground that the sentence and proceedings, and all the original papers, were in the superior court at Havana, to which the cause had been adjourned; and that this transcript was nothing more than the copy of a copy. A juror was withdrawn, to enable the defendants to obtain better evidence of the proceedings. This, however, they had not done; but relied upon the evidence of Mr. Duponceau, who stated the practice of these courts to be similar to that of the courts of the United States, where, upon a division of the circuit court, the question is adjourned to the supreme court. So, upon a similar division of the tribunal at St. Augustine, the case is adjourned to the superior court at Havana, to which all the papers are sent, and the cause is there finally decided and returned with the papers to the court at St. Augustine, and a mandate to execute the sentence: but Mr. Duponceau admitted, that his information was obtained, not from his own knowledge of the practice and judicial system of the Spanish colonies, but from this record, and similar records which he had seen. Another witness deposed, that he was sent by the defendants to St. Augustine, to obtain information respecting this capture, and also to procure a record of the proceedings; that he got this record by petitioning the governor, and his permit to the notary of the government, who signs and attests this record: that he saw the original papers in his office, was frequently there whilst the officer was copying them, and saw him sign this copy: that he did not know if this officer had a seal, or not; he requested him to authenticate the copy in proper form, and received it as it now appears, without a seal, but with a peculiar flourish of the pen, which is also made on the margin of each page. The objection now made to the record, is, that it is not authenticated by a seal, or the want of a seal by the officer proved.

THE COURT considered the case of Church v. Hubbart [2 Cranch (6 U. S.) 187] conclusive upon this point, against the authenticity of the record. The explanation of the witnesses seems to remove the objection made at the last trial, but the record not being authenticated by a seal, or by proof of its being a true copy, properly and regularly made, it cannot be read.

The defendants offered in evidence a copy of the manifest of the cargo of this vessel, taken in at Havana, certified under the hand of an officer called a notary of registers, without a seal, with a certificate annexed, signed by three notaries, under the seal of the college of notaries, stating that full faith and credit has and ought to be given to the authentications of the notary of registers. This notary certifies, that the paper which he authenticates, is a copy of the manifest of this vessel, made by him at the request of Don Mora, and which is at present in the notarial office, under his charge. Mr. Duponceau was examined as a witness, and stated, that from his experience, and having frequently seen copies of papers of this kind from the Spanish colonies, they are always authenticated in this way; but he admitted that he had never been in the Spanish colonies, and that he derived his opinion from no other source than that above mentioned.

THE COURT thought the evidence inadmissible. It does not appear that this notary has charge of these papers, and that he has authority to authenticate them. The copy should have been proved, in the regular way, to be a true copy.

The defendants moved for a nonsuit; there being no invoice produced of the cargo, and the bill of lading furnishing no evidence of plaintiff's interest, or the value of it.

THE COURT refused to direct the nonsuit. The bill of lading is evidence of interest, and the jury can say, what is the value of the boxes of sugar and segars mentioned in it.

The defendants then permitted the jury to find a verdict, without further argument; intending to move for a new trial.